**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| In re: BIOMET M2A MANGUM HIP IMPLANT PRODUCTS LIABILITY LITIGATION (MDL-2391) | ) CAUSE NO.   3:12-MD-02391-RLM-CAN ) ) ) THIS DOCUMENT RELATES TO: ) ALL CASES |

**MOTION FOR PAYMENT OF COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES FROM THE BIOMET COMMON BENEFIT MDL ASSESSMENT FUND**

1.      This motion applies to and only to the Master Settlement Agreement (MSA) that was approved by the Court pursuant to its February 3, 2014 Order, doc. 1317.  This motion will not apply to any cases settled in the future or outside the MSA.

2.      As of July 29, 2015 and through Funding Report 17, 1,837 cases were confirmed settled with roughly 75 unsettled MSA-eligible cases remaining in the MDL continuing to litigate.

3.      The Court's Case Management Order Establishing Common Benefit Fee and Expense Funds (doc. 1317-2) ("Common Benefit Order"), provided in paragraph II.A., that a "Biomet Hip Common Benefit Attorney's Fee Fund" and a "Biomet Hip Common Benefit Cost Fund" be established for the purpose of receiving and disbursing funds provided in this Order. These were set up as subaccounts of the "Biomet Common Benefit MDL Assessment Fund" pursuant to the Court's Order Appointing an Escrow Agent and Fee Committee on June 23, 2015.  The funds in the Biomet Common Benefit MDL Assessment Fund are retained in an escrow account that was established by certified public accountant, Jessica Larbes, C.P.A., pursuant to the order entered by this court on June 23, 2015.

4.      The Common Benefit Order further provides:

### III.    COURT APPROVAL AND FEE COMMITTEE
#### A.  Court Approval
The amounts deposited in the Biomet Hip Common Benefit Attorneys' Fee and Common Benefit Costs Funds shall be available for distribution to Participating Counsel who have performed professional services or incurred expenses for the common benefit. No amounts will be disbursed without review and approval by the Court or such other mechanism as the Court may order. Specifically, such sums shall be distributed only upon Order of the Court in MDL 2391. Each Participating Counsel who does common benefit work and has complied with this Court's Case Management Order Regarding Management of Timekeeping, Cost reimbursement and Related Common Benefit Issues has the right to present their claim(s) for compensation prior to any recommendation to the Court. Upon order of the Court, payments may be made from the Fund to Participating Counsel who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients. Attorneys eligible are limited to Plaintiffs' Executive Committee, Steering Committee, Liaison Counsel, and other Participating Counsel called on to assist in performing their responsibilities, and other Participating Counsel performing similar responsibilities in state court actions.

5.     This Court's Case Management Order Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit Issues (doc. 669; filed 7/18/2013) (Management of Time and Costs Order), specifically states:

> After the Court makes the final award of the total amount of common benefit attorney's fees and costs, a Fee Committee composed of Lead Counsel and the Executive Committee ("Fee Committee") shall accept submissions from all attorneys seeking payment of common benefit fees and expenses. The Fee Committee shall thereafter recommend an allocation of common benefit fees and expense reimbursements among those participating attorneys who submitted applications for such costs and fees. This recommendation will be submitted to the Court for a de novo review and final non appealable determination.

6.     The Common Benefit Fund was originally established through contributions by members of the Plaintiffs Steering Committee (PSC) amounting to $1,025,000.  *See* Exhibit A identifying the full contribution by each firm member of the PSC to date.  Subsequently, through

a provisional assessment on settled cases in this action, pursuant to section II.B.2. of the Common Benefit Order, 6% of the gross settlement value was set aside; comprised of 1% for common benefit costs and 5% for common benefit attorneys' fees.

7.  Pursuant to a separately negotiated settlement agreement dated January 31, 2014, the Biomet Common Benefit Settlement Agreement (CBSA), Biomet will deposit an additional $6 million into the Biomet Hip Common Benefit Attorney's Fee Fund for the sole purpose of resolving the Common Benefit Attorney Fees associated with this litigation. Paragraph 10(a) of the MSA provides that Plaintiffs participating in this Settlement Agreement and their counsel are third party beneficiaries of the CBSA. Plaintiffs who have elected not to participate in this settlement and their counsel are not beneficiaries of the CBSA in any way. The CBSA became fully effective at the time the MSA became effective.

8.  Section II.B.2.(c) of the Common Benefit Order states:

> The total Common Benefit Attorneys' Fees to be paid by the Fund for qualifying Common Benefit work shall not exceed the lesser of (a) the $6 million paid by the Defendant, pursuant to the Common Benefit Settlement Agreement and Paragraph 3(a) of this Order or (b) five percent (5%) of the total gross payments ultimately made by the Defendant pursuant to the Master Settlement Agreement and the Common Benefit Fee Agreement. Once the total gross amount to be paid by the Defendant to settling Claimants pursuant to the Master Settlement Agreement is known, and the total Common Benefit Fees to be paid for qualifying Common Benefit work under this provision (c) can therefore be determined, all additional monies in the Fees Fund shall be returned to the primary counsel of record for each settling Claimant in proportion to the provisional assessed contribution to the Fees Fund attributable to that Claimant's gross settlement.

9.  This is similar to what was done in the *Medtronic* MDL where the PSC separately negotiated the common benefit fee to be paid directly by the defendants in the amount of $18,250,000 and where no assessment was imposed to compensate for the common benefit

attorneys' fee. *See In re: Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1726, Doc. 1005, Memorandum in Support of Motion for Preliminary Approval and Notice of the Common Benefit Attorneys'' Fees; see also Order on Common Benefit Attorney's Fees, Nov. 10, 2008, approving the separately negotiated $18,250,000 common benefit fee.

10.    As of July 29, 2015, the total value of a confirmed 1,837 settled cases is $144,365,980. Of this, $7,218,299 is the total value of the set aside from the provisional 5% assessment collected for the Biomet Hip Common Benefit Attorney's Fee Fund.[1]    Thus, once the $6 million dollar common benefit fee is formally approved by the Court and deposited by Biomet pursuant to the CBSA, it will constitute the lesser amount as per the Common Benefit Order.

11.    Based upon an agreement reached among the PSC and Section II.B.2.(c) of the Common Benefit Order, the Biomet Hip Common Benefit Attorney's Fee Fund should pay no more than $6 million in attorneys' fees for the common benefit work that was performed and contemplated in the Management of Time and Costs Order.

12.    Further, pursuant to section II.B.2.(c) of the Common Benefit Order, the remainder of the fund, $7,218,299, as of July 29, 2015, shall be returned to the primary counsel of record for each settled plaintiff in proportion to the provisional assessed contribution to the Biomet Hip Common Benefit Attorney's Fee Fund.  The amount to be returned to primary counsel is based on the 5% provisional assessment that was held back for each settled Plaintiff. As stated in Section II.B.2.(c) of the Common Benefit Order and paragraph 8, *supra*, counsel of record is entitled to keep the portion of the rebated assessment consistent with the total

---

[1] **Currently, the total gross settlement awarded is $144,365,980.  The Biomet Hip Common Benefit Attorney's Fee Fund has a total of $7,218,299.00 and the Biomet Hip Common Benefit Costs Fund has $1,443,659.80.**

percentage attorney's fees charged under the attorney-client contract and under applicable state laws and ethics rules governing the proper handling of contingent attorneys' fees.  By way of example and for clarity, where a $200,000 award was assessed 5 % for common benefit fees, $10,000 would have been withheld from any distributions (five percent of $200,000 is $10,000). Consistent with the terms of the MSA, the entire 5% or $10,000 provisional fee assessment holdback is to be returned to primary counsel of record to share with the claimant consistent with their fee contract.  Where the contingency fee contract specifies an attorney fee of one-third, the attorney is entitled to $3,333.33 and the claimant entitled to the balance, or $6,666.67 of the $10,000 returned common benefit fee (rebate).

**Disbursement of Common Benefit Attorneys' Fees**

13.     The vast majority of cases have settled as a result of the MSA and PSC I has been disbanded and a new PSC (PSC II) has been appointed by the court pursuant to CMO No.3, which is dated 5/27/2015.

14.     The members of PSC I have performed significant and substantial services for the common benefit of all plaintiffs including but not limited to the following , PSC I:

    a.  Negotiated and ultimately created in conjunction with defendant a protective order of confidentiality;

    b.  Created a searchable electronic document storage platform that currently is housing 9,463,935 million pages of documents;

    c.  Reviewed millions of pages of documents and providing subjective coding of those documents.  All reviewers were trained on the issues in the litigation so they knew what to look for as well as how to utilize the database for effective and efficient searching and coding;

d.  Subjectively coded documents as "hot" or "warm" to determine which documents required secondary review by more experienced litigation attorneys;

e.  Analyzed document production to flag a significant number of documents that were identified as either "Duplicate", "Production Problem" or "Not Relevant", which was the result of motion practice relating to deficient production;

f.  Analyzed initial productions to determine alleged deficiencies, which required many hours of analysis relating to duplicative, irrelevant and missing production, which in part lead to the discovery that relevant production from specific time periods were stored on back-up tapes;

g.  Prepared, received and reviewed documents as a result of FOIA requests made to the FDA relating to the products at issue;

h.  Prepared and presented 'Science Day' to the Court identifying and developing key elements of the liability and damages in the litigation;

i.  Prepared and served interrogatories and requests for the production of documents and reviewed and worked with Defendants' answers to them;

j.  Negotiated with the Defendant orders relating to discovery of Fact Sheets as well as the Plaintiff Fact Sheet form, Defendant Fact Sheet form and a Disclosure Form;

k.  Provided  in depth analysis of case specific information by way of fact sheets and disclosure forms to determine demographics of all MDL cases;

l.  Established the identity of many document custodians that were not initially produced and negotiated the list with defendants to produce additional document custodians;

m. Negotiated and ultimately created in conjunction with defendant a retrieval protocol and explants preservation order;

n. Served extensive 30(b)(6) deposition notices for various departments within Biomet and as a result conducted eight 30(b)(6) depositions;

o. Identified key fact witnesses to be deposed by department through documents produced and reviewed, as well as the 30(b)(6) depositions that were conducted;

p. Negotiated the Master Settlement Agreement;

q. Tracked and analyzed categories of settled cases through the creation of an online web portal; and

r. Created and implemented the settlement mediation oversight program which was instrumental in the parties reaching the participation rate levels required by the MSA

15.  PSC I has performed a considerable amount of work for the common benefit of all Plaintiffs. The work performed by this PSC directly resulted in the settlement of over 1,800 cases. Further, the common benefit work performed by PSC I directly resulted in the CBSA with Biomet and such agreement was intended for the benefit of PSC I as compensation for the work already performed. This additional agreement will lead to the return of at least $1 million in common benefit fees that would have otherwise been chargeable against claimants' settlements.

16.  In accordance with the Management of Time and Costs Order, Plaintiffs' Counsel who expended time and effort for the common benefit of all plaintiffs have submitted detailed reports to plaintiffs' co-lead counsel, Thomas Anapol, who has retained these and has sent a copy of the accumulated records to the court-appointed accountant for the fund, Jessica Larbes,

C.P.A. and to all the members of the Fee Committee.[2]  To date, various Plaintiffs' Counsel including members of the PSC and their law firms have reported over 29,000 hours of attorney and administrative time.  All of the claims for hours submitted to date have been accumulated, reviewed and the total submitted and approved hours per firm are listed in column B on the attached spreadsheet. *See* Exhibit B, Spreadsheet of hours by Firm. The period for all submitted hours is from the fourth quarter of 2012 and  continuing through the first quarter of 2015.  Other than the creation and submission of   this Petition and other administrative work by the undersigned, little, if any Common Benefit work has occurred after the first quarter of 2015.  The spreadsheet also sets forth the reported hours as a percentage of the total hours reported which is set forth in column C of Exhibit B.  All of the information has been supplied to and approved by the court-appointed accountant and the Fee Committee.

17.    There are two primary methods for determining a common fund fee award: the percentage-of-recovery (fund) method and the lodestar method.  *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 243 F.3d 722, 732 (3d Cir. 2001).  The percentage-of-recovery method is generally favored in cases involving a common fund because "it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  *Rite Aid*, 396 F.3d. at 300 (quoting *In re The Prudential Ins. Co. of Am.*, 148 F.3d 283, 333 (3d. Cir. 1998)); *see also Welch &  Forbes*, 243 F.3d at 732, supra; *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d. Cir. 2006).   The court must also take into consideration the complexity and duration of the litigation as well as the range of awards in

---

[2] On June 23, 2015 the Court entered an Order appointing Jessica Larbes as the escrow agent for the Fund and appointing the following PSC I members to the fee committee: Thomas Anapol, Mark Lanier, Robert Dassow, Michelle Kranz and Justin Presnal.  Also appointed to the fee committee was Sylvius von Saucken as the non-attorney compliance member, who served in a fiduciary capacity for the members of the Fee Committee and PSC I.

similar cases when determining the reasonable of the fee awarded.  *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 243 F.3d 722, 735 (3d Cir. 2001).

18.     As of July 29, 2015, a $6 million common benefit fee constitutes 3.99% of the total value of the settlement.  A fee of 3.99% is reasonable for a complex product liability MDL involving more than two years' worth of work.  This is in line with other similar cases. In *Trasylol* the court awarded a 6% common benefit fee and that litigation was a little less than three years.  See *In Re Trasylol Products Liability Litigation,* MDL 1928, Doc. 270, 9/18/08.  In *Sprint Fidelis* and *Avandia* the awarded common benefit fee was 9% and 6.25% respectively, and those litigations lasted about 3 years. S*ee In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation*, Order on Method for Funding Common Benefit Fees and Expenses, MDL 1905, 11/21/2011; *In re: Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, Doc. 2820, 10/19/12.  Many objective parties would likely classify a fee of 3.99% in a complex litigation as this one as being underpaid.  However, all PSC I members agree that this amount is reasonable, especially in context of the separately negotiated $6,000,000 fee paid by Biomet, which in turn, allows for a 100% return of the provisional 5% assessment to counsel and claimants alike.

19.     Courts have recommended using the lodestar method as an appropriate vehicle to cross-  check the reasonableness of the percentage of recovery fee award.  See *In re AT&T Corp.*, 455 F3d at 164; *Rite Aid*, 396 F3d at 305; *Prudential*, 148 F3d at 333.  The cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier.  "[W]hen the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award."  *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) *Rite Aid*, 396 F3d at 30.  The lodestar cross-check

is a useful tool to determine reasonableness but should not displace the primary reliance on the percentage-of-recovery method. *See Id.* at 307.

20.     There are seven factors that courts are to consider when awarding fees using a percentage-of-recovery method. *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant   Corp. Prides Litig.)*, 243 F.3d 722, 733 (3d Cir. 2001).  These factors, known as the *Gunter* factors, are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of non-payment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter*, 223 F.3d at 195 n.1 (citing In re Prudential, 148 F.3d 283, 336-40 (3d Cir. 1998); *In re GM Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819-22 (3d Cir. 1995)); *see also, Boggess v. Hogan*, 410 F. Supp. 433, 438, 1975 U.S. Dist. LEXIS 14678, 12 (N.D. Ill. 1975).

21.     Here, based upon the total number of hours reported and the total amount of funds available ($6,000,000), the average hourly rate paid would be roughly $204.00 (6,000,000/29,373) for any common benefit work that was done.  This is a very low average hourly rate when compared to the hourly rates approved in other MDLs and also in light of the Gunter factors.

22.     In *Guidant*, the court approved a maximum hourly rate of $400/hour for attorneys and $150/hour for paralegals.  *See In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1708, Memorandum Opinion and Order Regarding Common Benefit Attorney Fee Allocation, p. 11.  In *Medtronic*, it was determined that, given the low amount of fees compared to the claimed lodestar, a cap of $500/hour would be applied to the

most experienced, senior partners, and that lower rates would be applied in decreasing amounts, relative to experienced, for less-experienced partners, associates and paralegals. *Id*. at 16.   The Committee found this cap to be well within the bounds of reasonable and customary as many courts have found that hourly rates within the ranges submitted were appropriate and had approved attorneys' fee awards based on similar hourly rates. Id. at 18.  *See*, e.g., *Love v. Mail on Sunday*, No. 05-7798 ABC (PJWX), 2007 WL 2709975, at *8 (C.D. Cal. Sept. 7,2007) (approving hourly rates of between $305 to $690 an hour for attorneys and $220 to $245 per hour for paralegals) (*citing Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, No. 04-9396,2006 WL 4081215, at *3 (C.D. Cal. Dec. 12,2006)); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-cv-1884(AVC), 2007 WL 2115592, at *4-5 (D. Conn. July 20,2007) (awarding attorneys' fees totaling 30% of an $80 million settlement and approving lodestar crosscheck with hourly rates of up to $770 per hour); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269,325 (W.D. Tex. 2007) (approving hourly rates between $500 and $550 for senior lead counsel and finding hourly rates between $350 and $475 reasonable for other counsel and associate attorneys). *Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1726, Doc. 1162 at 6. In Pradaxa, the court determined the following rates: co-leads = $500/hour; lead liaison = $450/hour; attorneys (10+ years) = $400/hour; attorneys (5-10 years) = $250/hour; attorneys (0-5 years) = $150/hour; paralegals = $30/hour; staff members = $20/hour.  *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 180723 (S.D. Ill. Dec. 4, 2014).  Similarly, in *Avandia*, the Fee Committee categorized the following hourly rate, which the court approved: paralegal = $185/hour; attorneys = staggered rates of $225, $285, $380, $475 and $595 based on varying levels of experience and from contributions to the case.  *In re:*

*Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 07-1871, Doc No. 2820, ¶23.

23.     A $6 million common benefit fee is a reasonable award in this litigation given the number of common benefit hours that were put into the litigation which ultimately resulted in just and fair early settlements of over 1,800 cases.  All PSC I members agree that this is a fair and just amount to compensate the work that was done, especially in light of the fact that it was separately negotiated and allows for the return of the 5% assessment back to primary counsel to be shared accordingly with the clients.  Further, no firms outside PSC I submitted any common benefit hours for additional review and consideration.

24.     Counsel was very effective in ensuring that the litigation continued to progress and even after settlement, counsel was diligent to ensure that the settlement process was swift and efficient.  It required many hours of mediations of hundreds of individual cases all overseen by PSC I counsel.

25.     When determining the distribution of common benefit funds among the lawyers who submitted common benefit time, under the law of the Seventh Circuit and throughout the federal system, common benefit attorneys' fees are not to be determined simply by hours reported.  Rather, in approving fees, courts must also evaluate the reasonableness and quality of the work performed.  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348 (11th Cir. 2010) citing with approval *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  The *Johnson* Court enumerated 12 factors to be considered when determining the reasonableness of a fee that take into consideration the quality

of the work performed.[3]  Those factors are to be applied to the total number of hours for which

fees are requested, known as the "lodestar."   In this case, the lawyers involved in the common

benefit work have agreed to a hierarchy of values to be placed on services performed for

common benefit in this litigation.  The PSC I's agreed-to hierarchy of values is attached as

Exhibit C.

　　　　26.　　　Primary responsibility at court room hearings, meetings to negotiate CMOs with

Defendant, and the settlement negotiations and the mediation oversight program are among the

highest valued common benefit work performed by members of the PSC according to the value

hierarchy and any reasonable interpretation of the Johnson factors.  Therefore, on the spreadsheet

attached as Exhibit B, columns D, F, H and J represent the  number of hours of work performed

by each PSC member firm for each tier.  Where the  total number of hours in tiers 1 and 2

exceeded 25% of the total number of hours performed by a PSC member firm, this justified an

increase in the fee percentage.  Similarly, where those hours in tiers 1 and 2 were less than or

equal to 25%, the Fee Committee reduced the fee percentage.  The Fee Committee reviewed all

the hours submitted by all twenty-five PSC member firms, and determined that those firms

whose attorneys engaged in more than 25% of their time performing tiers 1 and 2 activities, were

responsible for a greater proportionate share of the benefits provided to all claimants.  Stated

---

[3] The *Johnson* factors  are:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

differently, those firms who provided 75% or more of their activities in tiers 3 and 4 provided necessary, but objectively less-valued services, and as such, their fee percentage was reduced. Importantly, the Fee Committee made all increases and decreases within the common benefit fee amount of $6 million. This methodology has the added affect of creating a multiplier, which represents best practices as identified above. For example, in this case, there were 10 firms whose percentage of hours when measured against total hours, had their fee percentages increased to take into account the fact that their tiers 1 and 2 activities exceeded the 25% mark (or alternatively, their tiers 3 and 4 hours were less than 75%). And, there were 15 firms whose fee percentages were reduced accordingly. *See* Exhibit B, Columns O and P. This is very similar to the methodology that was used in the *Trasylol* MDL.

27.    The court-approved accountant and Fee Committee have carefully reviewed all the hours submitted by the PSC and determined that the hourly claims appear to have been incurred for the benefit of all plaintiffs in general as described in the section titled Common Benefit Work of the Management of Time and Costs Order.

28.    Pursuant to the Common Benefit Order, the Fee Committee formulated a plan for the distribution of the funds available for common benefit attorneys' fees on a percentage basis and sent a copy of this proposal to all attorneys who made a claim for common benefit time.

29.    The Fee Committee is recommending a percentage distribution because:

a.    It enables the attorneys who have performed the work to be compensated promptly. Most of the PSC members have settled all there cases and PSC I has been dissolved; and

b.    It places a cap on the amount of any fees distributed, with the average hourly fee to be awarded being approximately $204 per hour, which is extremely low for the

level and sophistication of the work done by named partners and key associates in

each law firm.

In the *Vioxx MDL* the court approved a basic average attorney rate of $443.00 per hour as the

starting point for analysis, before any multiplier was applied.  In the *Guidant MDL* the court

awarded an average attorney rate of $379.40 per hour and an average paralegal rate of $127.49

per hour. *In re Guidant*, 2008 WL 682174, at *15 (D. Minn. Mar. 7, 2008).  In this case, with a

cap of $6 million, the average rate per hour will be approximately half of the average rate

awarded in *Guidant* before any multiplier.  The Fee Committee submits the claims for common

benefit attorneys' fees are eminently reasonable under these circumstances.  Furthermore, all of

the attorneys and law firms listed have identified that they gave up other work, which would

have been more financially rewarding, to pursue this case to the benefit of all plaintiffs who

achieved settlements. (See *Johnson* factor 4 in Footnote 1 above).

30.    Consistent with the above, the Fee Committee has:

a.  reviewed all common benefit work done to date;

b.  reviewed the hours submitted by all law firms making common benefit fee claims;

c.  prepared the spreadsheet attached as Exhibit B and circulated it to all firms who submitted claims for common benefit work;

d.  Personally spoke with all counsel who made common benefit fee claims;

e.  Either orally or by e-mail answered all questions regarding common benefit fee calculations; and

f.  Provided copies of fees requested to any of the law firms who had questions about common benefit fees.

31.    The Fee Committee proposes that attorney's fees be awarded as a percentage of

net funds calculated below, as follows (ordered from largest to smallest):

1.  Anapol Schwartz - 29%

2.  Lanier Law Firm - 15%

3.  Aylstock, Witkin, Kreis - 10%

4.  Hovde Dassow and Deets, LLC - 7.5%

5.  Meyers & Flowers - 7.5%

6.  Neblett, Beard & Arsenault - 7.5%

7.  Parker Waichman - 2.66%

8.  Andrews and Thornton - 2.50%

9.  Robinson Calcagnie - 2.5%

10. Jones Ward - 2.5%

11. Weitz & Luxenberg – 2.0%

12. Babbitt Johnson - 1.5%

13. Besley Allen - 1.5%

14. Clark Love - 1.5%

15. Fisher Boyd – 1.0%

16. Pope McGlamry – 1.0%

17. Saunders & Walker – 1.0%

18. Zimmerman Reed – 1.0%

19. Zoll, Kranz & Borgess – 1.0%

20. Climaco, Wilcox, Peca & Tarantino -0.75%

21. Miller Firm – 0.60%

22. Johnson & Becker -0.25%

23. Hare Wynn -0.08%

24. Farci Lange -0.08%

25. Searcy Denney -0.08%

32.     Because of the limited funds available, and the low average hourly fee, the Common Benefit Fund will not overpay anyone who has made a claim for common benefit attorneys' fees.

33.     The Fee Committee and the co-lead members of PSC I submit that the claims have been made in good faith by the members of the PSC I.

34.     The court-appointed accountant, Jessica Larbes, after reviewing this matter with key members of the Fee Committee, has no objection to the proposed fee distribution and agrees with the methodology. An affidavit provided by Mrs. Larbes is attached as Exhibit D.

35.     This Motion and proposed Order has been reviewed and affirmatively agreed to by all the law firms who sought a common benefit fee and who are listed in paragraph 31 above. The Fee Committee has not been advised of anyone objecting to this Motion and the interests of all claimants have either been met by agreement or preserved through the  retention of funds.

**Disbursement of Common Benefit Expenses**

36.     In addition, prior to the settlement and collection of the cost assessment, PSC I collected a total of $1,025,000.00 from PSC I members to fund the litigation,  spent $415,923.51 of that fund, and an additional $184,071.47 collectively but separate and apart from the initial PSC I Common Benefit assessment for common benefit expenses for a total of $599,994.98. The majority of these common expenses resulted from the online document repository and court reporter costs for depositions as well as travel expenses throughout the litigation and settlement. Exhibit E is an accounting of the common benefit costs incurred.

37.     For cases subject to the MSA, PSC I separately engaged Garretson Resolution Group  (GRG) for two additional services, which were approved by court order.  First, PSC I

engaged GRG to manage the qualified settlement fund ("QSF") in which the Biomet settlement proceeds are held and to make disbursements from that fund as cases were funded. This was done in accordance with the Court's Order Establishing Qualified Settlement Fund and Appointing Fund Administrator (doc. 2757; filed 9/19/2014) (QSF Order).  Second, PSC I engaged GRG to verify and resolve any healthcare reimbursement obligations the aforementioned claimants may owe to Medicare or Medicaid for Medicare Parts A and B coverage or Medicaid coverage in the claimants' state of residence.  This was done in accordance with the MSA.  To date, GRG has billed a total of $849,250.00 for its work and, upon the provisional approval of PSC I, is to be paid that amount from the funds in the QSF earmarked for the MDL assessment.  Copies of        the invoices for these fees are collectively attached hereto as Exhibit G.  The amounts paid to GRG have been credited against the amounts in the Biomet Hip Common Benefit Cost Fund.  Any future fees in cases subject to the MSA due to GRG for their services   would be paid from the Biomet Hip Common Benefit Cost Fund, subject to the Court's approval.

38.    Expenses incurred by PSC I members have been approved by Jessica Larbes and the court appointment Fee Committee in accordance with the Management of Time and Costs Order, in the amount of $1,449,244.98.  This represents the total common benefit costs incurred by all PSC I firms, including their common benefit assessments that were collected to fund the litigation and includes all QSF administration and lien resolution fees paid to GRG.  *See* Exhibit F, which includes a Biomet Expense Summary spreadsheet.  The individual expense submissions submitted by each firm are available for the courts review upon request.

39.    All costs submitted by PSC I firms were reviewed by Jessica Larbes, CPA, and the Fee Committee under the guidelines set forth in the Management of Time and Costs Order,

which lays out the parameters for the type of costs that will be approved and not approved. The following methodology was used to review and approve common benefit costs:

    a.   All the receipts and expense reports were collected and organized by firm;

    b.   An Accounting of Expenses report was prepared and each line item was reviewed for any discrepancies, Discrepancies were noted and each firm was contacted regarding them to see if they could be cured;

    c.   All expenses were categorized by using 19 major categories. For each category, the following was determined:

        i.   the average expense for that category;

        ii.  the total number of expenses for that category; and

        iii. the total cost of expenses for that category.

    d.   Any expense that exceeded the average for its category was flagged to request additional information wand was subject to further review by the fee committee members. For example, an expense for transportation that exceeded the average may be determined to be reasonable if there were multiple passengers;

    e.   Any instance where a line item did not match the supporting documentation, additional information was requested and it was subject to further review;

    f.   Any instance where expenses far exceeded the average expense amount for that category the fee committee required the actual receipt; and

    g.   All Fee Committee members reviewed submitted expenses while taking into account ABA Formal Op. 93-379, as appropriate; and

h.  All Fee Committee members voted on the approval of the costs submitted by each firm while abstaining from voting on the approval of the costs submitted by their own firm.

40.     Upon approval of this Petition, the Common Benefit Cost Fund of $1,443,659.80 less reasonable expenses reimbursed in the amount of $1,449,244.98 leaves a $5,585.18 shortfall in the account.  GRG has agreed to reduce its bill in the amount of $5,585.18 to arrive at a zero balance in the Common Benefit Cost Fund.

41.     Any additional cases approved for settlement after July 29, 2015 (and after funding report 17) are not covered under the relevant MSA and should not be charged an MDL assessment unless or until they are subject to an MDL assessment as a result of further Order by this Court.

42.     In addition, PSC I has agreed to holdback $25,000 from its Common Benefit Assessment Account to be used to pay any residual expenses during the transition of leadership from PSC I to PSC II.

43.     The Defendant has reviewed this motion and has no objection.


Dated: August 7, 2015                        Respectfully submitted,

                                             PLAINTIFFS' STEERING COMMITTEE


                                             /s/ Thomas R. Anapol
                                             Thomas R. Anapol
                                             ANAPOL SCHWARTZ
                                             1710 Spruce Street
                                             Philadelphia, PA 19103
                                             Telephone: (215) 735-1130
                                             Facsimile: (215) 875-7707
                                             Email: tanapol@anapolschwartz.com


                                             /s/ W. Mark Lanier

W. Mark Lanier, Esq.
Lᴀɴɪᴇʀ Lᴀᴡ Fɪʀᴍ, PC
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Email: wml@lanierlawfirm.com

*Plaintiffs' Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2015, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which provided electronic service upon all counsel of record.